# Illinois Official Reports

## Appellate Court

---

### *People v. Sims*, 2014 IL App (1st) 121306

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY SIMS, Defendant-Appellant. |
| | |
| District & No. | First District, Third Division<br>Docket No. 1-12-1306 |
| | |
| Filed<br>Rehearing denied | April 30, 2014<br>July 9, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in denying defendant's motion to suppress the cocaine discovered in his pants during a *Terry* stop and frisk, where the arresting officer's testimony that he saw defendant "stuff an unknown object into his crotch area," that he recognized defendant and knew he had been arrested for unlawful use of a weapon and that defendant's "movement" as he walked away was indicative of "someone that could be armed" was insufficient to give the officer a reasonable suspicion to believe defendant was committing the crime of unlawful use of a weapon, especially when the officer only saw defendant place his hand in his pants and never saw a weapon or contraband; therefore, defendant's conviction for unlawful possession of a controlled substance was reversed. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-12636; the Hon. William H. Hooks, Judge, presiding. |
| | |
| Judgment | Reversed. |

Counsel on
Appeal

Michael J. Pelletier and Patrick Morales-Doyle, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Carlos Vera and Michelle Katz, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Neville and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant appeals the trial court's denial of his motion to suppress evidence that was seized during a *Terry* stop and frisk. *Terry v. Ohio*, 392 U.S. 1 (1968). He argues that the arresting officer did not have sufficient reasonable suspicion of criminal activity. While responding to an unrelated situation, a police officer saw defendant, sitting out in front of a building, "stuff an unknown object into his crotch area" and begin to walk away. The officer, who recognized defendant and knew he had an arrest for unlawful use of a weapon, stopped and searched defendant on the ground that his "movement" was indicative of "someone that could be armed." Although defendant turned out to be unarmed, the officer seized a plastic bag containing 25 smaller plastic bags of a substance that ultimately tested positive for cocaine.

¶ 2     After a bench trial, the trial court found defendant guilty of the possession of a controlled substance with the intent to deliver and sentenced him to six years' incarceration on his criminal record as a Class X offender. We reverse the conviction and sentence on the ground that the stop was not supported with sufficient reasonable suspicion that a crime had been, or was about to be, committed.

¶ 3                                          Background

¶ 4     The facts are largely undisputed. On June 14, 2010, Officer Robert Vahl, an 11-year veteran of the Chicago police department, was on a routine patrol in an unmarked police vehicle. Vahl saw two individuals, who are not parties to this appeal, engage in activity that he believed was "about to be a narcotics transaction." Vahl did not see defendant Henry Sims with either individual at any time. Vahl and his partner stopped to investigate. Vahl followed one suspect through a gangway and his partner followed the other in a different direction. As Vahl, who wore civilian clothing with a vest and star around his neck, left the gangway, he saw Sims sitting in front of what appeared to be an abandoned building. Vahl saw Sims "stuff an unknown object into his crotch area" and begin to walk away. Vahl, recognizing Sims and recalling that he had been arrested for unlawful use of a weapon, stopped Sims, walked with him a few feet down the gangway, and conducted a brief search. According to Vahl, he conducted the search because Sims's "movement was consistent with someone that could be armed," but admitted that it is not illegal for Sims to stuff his hand down his pants. Vahl began his search by placing his open hand on Sims's crotch, where he felt what he

immediately recognized as suspected narcotics. Testing revealed that the recovered material consisted of 25 individual items, 16 of which were tested, and found to contain in excess of 5 grams of cocaine.

¶ 5 Sims filed a pretrial motion to suppress the evidence, which the trial court denied. The only witness at the hearing on the motion to suppress was Officer Vahl. At trial, Vahl offered testimony consistent with his testimony at the hearing. The parties stipulated to the chain of custody, weight, and composition of the recovered substance. The trial court found Sims guilty of possession of a controlled substance with intent to deliver and sentenced him to six years' incarceration.

¶ 6 Sims contends that the trial court erred when it denied his motion to suppress the evidence because Officer Vahl's actions were not supported by the reasonable suspicion required for a *Terry* stop.

¶ 7 Analysis

¶ 8 The fourth amendment to the United States Constitution (U.S. Const., amend. IV), which applies to the states through the fourteenth amendment (U.S. Const., amend. XIV), and article I, section 6 of the Illinois Constitution (Ill. Const. 1970, art. I, § 6), protects against unreasonable searches and seizures. Generally, this protection requires a warrant supported by probable cause. See *People v. Cummings*, 2014 IL 115769, ¶ 14. But, the United States Supreme Court has recognized exceptions to the warrant requirement, including an investigative stop supported by reasonable suspicion that a crime has been, or is about to be, committed, commonly known as a *Terry* stop. *Id.* ¶ 15 (citing *Terry*, 392 U.S. at 21-22); see also 725 ILCS 5/107-14 (West 2010).

¶ 9 To constitute reasonable suspicion, the evidence need not rise to the level of probable cause, and it is not necessary that the police officer witness a crime; however, a hunch is insufficient. *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 33. Reasonable suspicion is based on an *objective* standard with the facts viewed from the perspective of a reasonable officer at the time of the stop. *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 14. A police officer must be able to point to specific articulable facts which justify the intrusion on the suspect's liberty (*id.*), " 'such as when the officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot' " (*People v. Jackson*, 2012 IL App (1st) 103300, ¶ 17 (quoting *People v. Ertl*, 292 Ill. App. 3d 863, 868-69 (1997))). "In sum, '[r]easonable suspicion is a less exacting standard than probable cause.' " *Daniel*, 2013 IL App (1st) 111876, ¶ 33 (quoting *People v. Ward*, 371 Ill. App. 3d 382, 412 (2007)). The decision to make an investigatory stop is based on the totality of the circumstances. *Sanders*, 2013 IL App (1st) 102696, ¶ 14.

¶ 10 A *Terry* stop and frisk entails a two-part analysis. First, a reviewing court must determine whether a police officer had reasonable suspicion to justify the temporary detention of a suspect. *Jackson*, 2012 IL App (1st) 103300, ¶ 19. A frisk, however, is justified only when the officer can further articulate a reasonable belief that the suspect was armed and dangerous. *Id.*

¶ 11 Our review of a trial court's ruling employs a two-part standard of review. *Cummings*, 2014 IL 115769, ¶ 13 (citing *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006)). The trial court's findings of fact are given deference and will be reversed only if they are against the

manifest weight of the evidence. *Id.* On the other hand, the trial court's application of the law to the established historical facts is given no deference, and our review is *de novo*. *Id.* Each case turns on its own facts. *Terry*, 392 U.S. at 30. Nevertheless, "that does not mean that a court is free simply to ignore an entire body of relevant case law and the principles and guidelines articulated therein." *Luedemann*, 222 Ill. 2d at 552.

¶ 12    The facts are few and largely undisputed. Officer Vahl encountered Sims while he was investigating a suspected narcotics transaction, but he did not, before the encounter, see Sims engage in any illegal activity. When Vahl saw Sims put an object into the front of his pants, Vahl believed Sims's actions were consistent with secreting a weapon. Vahl knew that Sims had been arrested for a weapons violation but did not know the outcome of the arrest. As Sims began to walk away, Vahl stopped him, escorted him down the gangway, and conducted a pat-down that revealed suspected narcotics.

¶ 13    We find the combination of these facts insufficient to give Vahl a reasonable suspicion that Sims was committing the crime of unlawful use of a weapon. Vahl never testified that he saw a weapon, or any other contraband. He only saw Sims place his hand in his pants.

¶ 14    The cases on which Sims relies are instructive. In *People v. F.J.*, 315 Ill. App. 3d 1053 (2000), the juvenile respondent was arrested and charged with unlawful possession of a weapon after a frisk revealed a handgun in his pocket. The police officer who conducted the search testified that he was on patrol following the report of a gang disturbance in a high-crime area. The respondent was seen standing at the entrance to an alley. The officer decided to conduct a field interview. As he was getting out of his car, the officer saw the respondent put an unknown object in his pocket. Because the officer did not know what the object was, he conducted a pat-down search and recovered the handgun. The trial court denied the respondent's motion to suppress evidence and found the respondent delinquent. On appeal, this court reversed, holding the police officer lacked a reasonable suspicion of criminal activity that would justify a *Terry* stop. *Id.* at 1059. This court observed "the fact that someone puts something in his or her pocket does not justify the inference that the person is involved in criminal activity." *Id.* at 1058.

¶ 15    Sims's action in placing an object in the front of his pants and Vahl's recognition of Sims and knowledge of a prior arrest might create in the mind of a reasonable officer a "gut feeling" that something might be afoot. But, reasonable suspicion requires more than a hunch or assumption that the suspect is up to no good; it requires articulable facts which support the inference that a crime has been, or is about to be, committed. *Sanders*, 2013 IL App (1st) 102696, ¶ 14. Hunches or assumptions by nature speak in possibilities, not reason or objective truths. Even Vahl admitted on cross-examination that, although suspicious, it is not a crime to place an object in one's pants. And, all Vahl saw was Sims put something that he could not identify in the crotch area of his pants and walk away from him.

¶ 16    Sims's reliance on *People v. Fox*, 203 Ill. App. 3d 742 (1990), is squarely on point. In *Fox*, the defendant was riding a motorcycle, when he was stopped for speeding. The officer wrote him a citation. While he was writing the citation, the officer noticed the defendant tugging at a vest he was wearing. As the defendant rode away, the officer noticed a small bulge that made him curious even though it did not appear large enough to be a weapon. When the officer saw defendant reach back to that spot and make a motion that suggested to the officer that the defendant was adjusting a weapon to make it less visible, the officer stopped the defendant a second time. The defendant testified to the contrary, that he adjusted

his vest for better wind resistance while riding. A search revealed a weapon. The reviewing court first decided that the second stop must be viewed as independent of the speeding violation and supported by a separate finding of reasonable suspicion. *Id.* at 745-46. The reviewing court ultimately concluded that the officer's conclusion that the defendant was armed was supported only by a hunch based on conduct that had an innocent explanation and affirmed the order of the trial court suppressing evidence of the weapon. *Id.* at 747.

¶ 17 The similarities between the *Fox* case and the facts here are striking, and we do not find the differences significant enough to support a different result. First, unlike *Fox*, Vahl testified that he knew of a prior weapons offense arrest. But, Vahl, like the officer in *Fox*, had a hunch that Sims was hiding a weapon, and a hunch, even a hunch supported by a general background of criminal activity, is not enough to support a *Terry* stop. See *People v. Thomas*, 198 Ill. 2d 103, 110 (2001) (holding knowledge that defendant had been previously arrested for drug offenses and had recently been released from prison was insufficient to support investigative stop even when coupled with tip that defendant was using his bicycle to deliver illegal drugs). Second, unlike *Fox*, although Vahl admitted that it was not a criminal offense, no one offered an innocent explanation for Sims placing his hand in the front of his pants. Nevertheless, we find it is the burden of the State to present evidence supporting a reasonable inference of criminal activity and not Sims's burden to justify his actions to the State by supplying innocent explanations for his behavior. See *People v. Cregan*, 2014 IL 113600, ¶ 23 (although ultimate burden of proof remains with defendant, once defendant presents *prima facie* case that evidence was obtained in illegal search, burden shifts to State to provide evidence to counter defendant's *prima facie* case). Until a suspect's actions are sufficient to create more than a hunch of criminal activity, the fourth amendment protects both innocent and suspicious conduct with equal vigor. Therefore, we find that the State failed to establish that Vahl had a reasonable suspicion sufficient to justify the intrusion on Sims's right to go about his business free from intrusion by the police.

¶ 18 We find the State's reliance on *People v. Colyar*, 2013 IL 111835, misplaced. In *Colyar*, our supreme court upheld the search of a vehicle based on reasonable suspicion that a weapon was present where police officers observed a bullet in the center console during the officers' investigation into a vehicle blocking the entrance to a motel parking lot. *Id.* ¶¶ 43-45. By contrast, Vahl never observed a weapon or a bullet. Accordingly, no search was necessary to protect his safety.

¶ 19 We conclude that the trial court erred when it denied Sims's motion to suppress the evidence recovered during the unlawful search of his pants. Because, absent the illegally seized narcotics, the State cannot meet its burden of proving defendant's guilt beyond a reasonable doubt, we reverse Sims's conviction and sentence outright. See *People v. Rhinehart*, 2011 IL App (1st) 100683, ¶ 20.

¶ 20 Mittimus and Fines and Fees

¶ 21 Having reversed Sims's conviction, his requests to correct the mittimus and the fines and fees order are now moot, and we need not discuss the issues further.

¶ 22 We reverse the judgment of the circuit court of Cook County.

¶ 23 Reversed.